SUPERIOR COURT.

H. W. WILDE agt. ALFRED and LOUIS JOEL, FLORA JOEL and WM. LEEDS.

In ascertaining the *damages* on a reference upon the *discharge of an injunction,* the question arises whether any other allowance can be made for *costs* or *counsel fees,* than what the Code permits to be recovered by a successful party against his adversary ?

" There may be allowed to the prevailing party upon the judgment, certain sums by way of indemnity for his expenses in the action, which allowances are in

Wilde agt. Joel and others.

this act termed costs." The measure of compensation between attorney and client, is left to the agreement, express or implied, of the parties. (*Code*, § 303.)

*Held*, that the import of this provision is, that the unsuccessful party shall only be subjected to the charges specified as costs, where the action takes the ordinary course. But where there is a *special contract* as to damages, (and the injunction bond amounts to this in fact,) it will control; it will afford a new rule of estimate, and is not to be affected by the ordinary rates of allowance.

Another question then arises, whether if *counsel fees* are allowable, they can only be allowed when *actually paid*, as it is the damage sustained which is to be repaid, not any contingent liability?

The Code has left the compensation of attorney and counsel, to the operation of any agreement express or implied. Counsel can have the same remedy for services rendered which they possessed before its passage.

If a client can be made responsible, and a claim is reasonable, a bond of indemnity would appear to cover such a liability, as much as an actual advance. Therefore counsel fees, although *unpaid*, if reasonable, can be recovered in the shape of damages, in an action upon an injunction bond.

And then another important question arises, what is the effect of the Code as to the mode of ascertaining damages by an assessment under an order of reference? What does the report if confirmed, settle? Can it be followed by a judgment for payment of the amount? If it can, as to the principal and party to the action, can it be as to the sureties? or is the only remedy an *action on the undertaking?*

*Held*, that under the provisions of the Code on this subject, a reference establishes the amount of damages, so that they become finally liquidated as between the parties. Where there are sureties, this shows the propriety of directing notice to be given to them. Legal defences which are wholly independent, will arise, and may be taken in the action on the undertaking. There is not authority enough to warrant a judgment upon the bond for the amount recovered, even against the plaintiff and obligor. It is therefore the safest course to bring an action upon the undertaking.

Although the provision of the Revised Statutes, (2 *R. S.* 190,) which is presumed to be in force, that the chancellor shall direct the delivery of any bond executed under the provisions of the article to the person entitled to the benefit thereof, for prosecution, whenever the condition thereof shall be broken, or the circumstances of the case shall require such delivery, yet the court might well decline the delivery up of an undertaking on file in these cases; (*See Code,* § 423;) as an inspection to draw the complaint is all that is necessary; and upon the trial, the clerk can be subpœnaed to produce it in case of dispute.

The *items* disallowed and allowed by the court *seriatim*, as damages on dissolving the injunction in this case, will be found stated at the conclusion of the opinion.

*General Term, January,* 1857.

By the court—HOFFMAN, Justice. This is an appeal from

*Wilde agt. Joel and others.*

order at special term, confirming a report of the referee, ascertaining damages upon an injunction discharged.

The plaintiff gave his own undertaking, upon obtaining the injunction, conditioned to pay to the defendants enjoined such damages, not exceeding the sum of $500, as they may sustain by reason of the said injunction, if this court shall finally decide that the said plaintiff was not entitled thereto ; such damages to be ascertained by a reference or otherwise, as the court shall direct.

The defendants were enjoined from selling, or in any manner disposing of the stock of jewelry and other property of the defendants Alfred and Louis Joel, in the store No. 143 Broadway, in the city of New-York. Injunctions had been obtained in two other suits against the same parties.

1st. The first point raised is, that no other allowance can be made for costs or counsel fees, than what the Code permits to be recovered by a successful party against his adversary. The 222d section of the Code is almost identical in its language with the rule of the supreme court in equity, adopted in 1847 ; and that was a transcript of the rule of the court of chancery in force from 1837. Unless there is something in other parts of the Code to furnish a different rule, the decisions of the courts upon provisions so similar, will afford a sufficient guide for determining this question. In the cases of *Edwards* agt. *Bodine*, (4 *Edw. Ch. Rep.* 292, 11 *Paige*, 224,) and in *Aldrich* agt. *Reynolds*, (1 *Barb. Ch. Rep.* 613,) it was settled that counsel fees paid in order to obtain a dissolution of an injunction, could be included in the amount of damages assessed upon a bond, though not taxable under the fee bill then in force. The provision of the Code as to the costs, cannot have a greater effect upon this question than the provision of the old fee bill. By the latter, " for services hereafter done or performed in the several courts of law and equity in this state, by the officers thereof, or in any proceeding authorized by law, the following fees shall be allowed." (2 *R. S.* 622.) By the former, " there may be allowed to the prevailing party, upon the judgment, certain sums by way of indemnity for his

expenses in the action, which allowances are in this act termed costs." The measure of compensation between attorney and client, is left to the agreement, express or implied, of the parties. (§ 303.)

I take the import of this provision to be, that the unsuccessful party shall only be subjected to the charges specified as costs, where the action takes the ordinary course. But where there is a special contract as to damages, (and in fact the injunction bond amounts to this,) it will control; it will afford a new rule of estimate, and is not to be affected by the ordinary rates of allowance. And so it was decided in *Coates* agt. *Coates*, (1 *Duer*, 664.) Damages ascertained upon a reference, consisted chiefly of expenses incurred, and counsel fees paid by the defendant, in order to procure a dissolution of the injunction. The court denied a motion to strike them out of the report.

2d. Another point raised by counsel is, that even if counsel fees are allowable at all, they can only be allowed when actually paid. It is the damage sustained which is to be repaid, not any contingent liability.

The Code has left the compensation of attorney and counsel, to the operation of any agreement, express or implied. Counsel can have the same remedy for services rendered, which they possessed before its passage. If a client can be made responsible, and a claim is reasonable, a bond of indemnity would appear to cover such a liability, as much as an actual advance. In an action for injury to the person, the jury may allow for medical attendance, without payment, indeed, when the party injured, is wholly unable to pay.

In *Haddan* agt. *Mills*, (4 *Carr. & Payne*, 486,) Chief J. TINDAL, in an action for arresting a party, and holding him to bail without reasonable cause, charged the jury that they might give the plaintiff the amount of the extra costs not allowed in taxation, and some moderate compensation for the trouble and anxiety occasioned by the action. In *Garret* agt. *Hogan*, (19 *Alabama Rep*. 344,) it was expressly ruled, that counsel fees, although unpaid, if reasonable and necessarily incurred, could

be recovered in the shape of damages, in an action upon an injunction bond. The condition was, "to pay all damages and costs occasioned to the defendants by the vexatious issuing out of the writ." This appears to be a reasonable rule, and consistent with the import of the obligation entered into on this undertaking.

3d. Another question is, what is the effect of the Code, as to the mode of ascertaining damages by an assessment under an order of reference? What does the report, if confirmed, settle? Can it be followed by a judgment for payment of the amount? If it can as to the principal and party to the action, can it be as to the sureties; or is the only remedy an action on the undertaking? The course of the law upon the subject of these injunction bonds, will illustrate these questions.

The system of requiring security, was for a long time unknown in England, with the exception, that where the plaintiff at law was out of the kingdom, the plaintiff in equity, after verdict, was compelled to deposit the amount recovered. (2 *Cox Cas.* 330.) It seems, however, that the practice is now prevalent. (*Novello* agt. *James,* 31 *L. & Eq. Rep.* 280.)

The 42d rule of the court of chancery in our state, adopted in 1806, provided for a similar deposit, in such a case. The Revised Statutes of 1830, directed security to be given in various stages of proceedings at law, which the injunction was to restrain. The 31st rule of 1829, provided, that where no special provision was made by law as to security, the officer allowing an injunction might require of the complainant or his agent, a bond with security, or his own bond only, to the party enjoined, in such sum as might be deemed reasonable, conditioned to pay such party all damages he might sustain by reason of the injunction. The reasons for adopting this rule, will be found stated in *Edwards* agt. *Bodine,* (4 *Edwards' Reports,* 192.) On the revision of the rules in 1837, this part of the rule was retained, with some modifications. One was, that the security should not be less than $500; and this clause was added: " Such damages to be ascertained by a reference to a

master or otherwise, as the chancellor or vice-chancellor hav-
ing jurisdiction of the cause should direct." (*Rule* 31.)

In the rules of the supreme court, adopted in 1847, after the
new constitution, the last cited rule was adopted in nearly the
same language. There was added a clause, that an injunction
should not be allowed on the plaintiff's bond only, unless he
justified in an amount equal to the penalty. (*Rule* 21.) Thus,
then, from 1837 to the passage of the Code, the rule was in
substance as follows : " A bond was taken in a sum not less
than $500, with or without sureties, conditioned to pay to the
party enjoined, such damages as he may sustain by reason of
the injunction, if the court shall eventually decide that the
complainant was not equitably entitled to such injunction ;
such damages to be ascertained by a reference to a master or
otherwise, as the court having jurisdiction of the cause, shall
direct."

The 222d section of the Code is, that where no provision is
made by statute, as to security upon an injunction, the court
or judge shall require a written undertaking on the part of the
plaintiff with or without sureties, to the effect that the plaintiff
will pay to the party enjoined, such damages, not exceeding
an amount to be specified, as he may sustain by reason of the
injunction, if the court shall finally decide that the plaintiff
was not entitled thereto. The damages may be ascertained
by a reference or otherwise, as the court shall direct. There
are some cases under the Code, which tend to answer the pres-
ent inquiries.

In *Griffin* agt. *Slate*, (5 *Howard*, 205,) the defendants, after
an injunction discharged, moved for leave to prosecute the
undertaking, having obtained the report of a referee as to the
damages. The court held, that the report ought to be con-
firmed, for upon it the court was to pronounce its judgment
as to the damages sustained by reason of the injunction, and
to determine whether the injunction bond should be ordered
to be prosecuted. In *Higgins* agt. *Allen*, (6 *Howard* 30,)
the court ruled that where a bond was taken in 1846, in a
suit in chancery, and did not contain the clause as to a refer-

once, such a course could be taken. But under the Code it could be, whether the clause was in the undertaking or not. It was also held, that the undertaking could not be in suit without permission granted.

The court in *Gracie* agt. *Sheldon*, (3 *Barbour's Sup. Ct. Rep.* 232,) made a similar decision upon a bond taken under the 31st rule of the court of chancery. In *Dunkin* agt. *Lawrence*, (1 *Barb. Sup. Ct. Rep.* 447,) where an injunction was dissolved on the matter of the bill only, the court refused a reference. It could not be had until the cause was eventually decided. The injunction might be reinstated upon the proofs, and the plaintiff shown to have been entitled to it. In *Sherman* agt. *The New York Central Mills Co.*, (11 *Howard* 269,) and in *Weeks* agt. *Southwick*, (12 *Howard*, 170,) a similar decision was made under the Code. In the latter case, a referee had made a report for dismissal of the complaint, but judgment was not yet entered, and the motion was held to be premature.

*Loomis* agt. *Brown*, (16 *Barbour*, 325,) was the case of an injunction discharged by the dismissal of the complaint upon a trial, and judgment was docketed. At a special term, the court ordered that the damages sustained by the defendant by reason of the injunction, should be ascertained by an action upon the undertaking. Upon a demurrer to the complaint filed in that action, it was held that the dismissal of a complaint on a final hearing, implied of itself a determination that the plaintiff was not equitably entitled to the injunction at the commencement of the suit.

The case of *Bein* agt. *Heath*, in the supreme court of the United States, (12 *Howard*, *U. S. Rep.* 177,) was this. An injunction was obtained in Louisiana, upon the equity side of the circuit court, and an order was made that a bond be given very similar to the undertak. ' ' .der the Code. It was held, that . court of the United States, could not proceed accord- practice of Louisiana in such a case. " A court eding according to ' ules of equity, cannot give a judgment against the obligors in an injunction bond, when it dissolves the injunction. It merely orders the dissolution, leav-

ing the obligee to proceed at law against the sureties, if he sustains damage from the delay occasioned by the injunction."

In California, the 120th section of the Practice Act of 1850, is in the precise words of the 222d section of our Code. In *Russell* agt. *Elliott*, (2 *California Rep.* 215,) an injunction was dissolved, and a reference ordered to ascertain damages. referee reported $300 due. The report was confirmed and judgment ordered for the amount and execution. It appears that this clause of the act was repealed after the proceedings, and the judge below set the judgment and execution aside. The court above ordered a mandamus to compel the entry of judgment. The constitutional question was considered, and the court held, that by entering into the undertaking, the parties had waived a trial by jury.

In *Kelly* agt. *Lockwood*, (1 *Kelly's Rep.* 72, *Georgia*,) it was held, that the judgment of the court fixing the amount of damages, was all that would be looked to in an action on the bond. I apprehend that the provision of the Code in question is legal, and that a reference establishes the amount of damages, so that they become finally liquidated as between the parties. Where there are sureties, this shows the propriety of directing notice to be given to them. I do not entertain a doubt as to this, so far as the mere quantum or nature of the allowance is concerned. Legal defences which are wholly independent will arise and may be taken in the action on the undertaking. I consider that there is not authority enough to warrant a judgment upon the bond for the amount recovered, even against the plaintiff and obligor. At least, it is certainly the safest course to bring an action upon it. In this connection the provision of the Revised Statutes, (2 *R. S.* 190, 195,) should be noticed. It is to be presumed that this remains in force. (*Cook* agt. *Dickerson*, 2 *Sandford*, 691.) It is enacted that the chancellor shall direct the delivery of any bond executed under the provisions of the article, to the person entitled to the benefit thereof for prosecution, whenever the condition thereof shall be broken or the circumstances of the case shall require

such delivery. (*See section* 423 *of the Code.*) I have gener-
ally declined to order the delivery up of the undertaking. An
inspection to draw the complaint is all that is necessary, and
upon the trial, the clerk can be subpœnaed to produce it in
case of dispute.

The conclusions upon which the court without any difficulty
agree, are these : 1st. The expenses of the reference to ascer-
tain whether the assignment was made with intent to defraud,
should not be allowed as damages, nor the fee upon the mo-
tion to confirm that report.   This excludes the charge of $100,
and of $10 for attendance fees before Mr. Sedgwick, and fee
on confirmation of report.

2d. No compensation for preparing affidavits to show that
the assignment was made in good faith, or for arguing that
question, should be allowed.   But a reasonable fee should be
allowed for preparing to argue, and arguing a motion to dis-
solve the injunction, on the ground that the plaintiff had no
cause of action, and no right to an injunction.   If the parties
cannot agree upon this, application may be made to the judge
who heard the motion to dissolve, to adjust it, or a reference
had.

3d. The commissions of Leeds, $72, which we understand
to be his commissions upon the sales generally, is inadmissible.
The sale took place ; the commission would, in any event, have
fallen on the fund.

4th. The interest on the $600, allowed by the referee, $122,
was properly assessed.   This, it will be seen, disposes of the
items of $100, the fee of arguing before Judge DUER, and of
the $25, before Judge PAINE.   They must be rejected, and
what shall be deemed proper as now indicated, be substituted.
The $15 is allowed.

5th. The majority of the judges who heard the case, concur
in holding that the $50 allowed as damages to Messrs. Leeds,
is a proper charge against the plaintiff upon this undertaking.
And also, the one-third of $35, the referee's fees on the in-
quiry at Leeds' instance.

6th. A majority are also of the opinion, that the one-third of $100 which it is assumed was for Leeds' fees and charges of counsel in the three suits, ought to be allowed.