Minshall, C. J.
The case gives rise to the following questions, and, if any of them, cannot be *119 answered in the negative, the judgment must be affirmed:
1. Is the award of the arbitrators the decision contemplated by the undertakings ?
2. Did the dismissal of the action by the consent of the parties estop the defendants from insisting on the terms of their undertakings?
3. Does the provision in the agreement of submission, that its execution should not impair the liability of the defendants on either of the undertakings, preclude them from insisting that it has not been judicially decided that the injunction ought not to have been granted ?
4. Was the dissolution of the injunction after the award and the dismissal of the action, such a decision ?
We will consider these questions in their order; and shall, hereafter, speak of these undertakings as bonds, and for convenience, use the singular, as what is true of one is true as to both.
1. No action can be maintained on the bond except in accordance with its terms. The liability of the principal and sureties is the same — it is on the bond; and no action on it will lie against the principal where it would not lie against the sureties. This may be regarded as settled law. In Bien v. Heath, 12 How. U. S., 168, it is said by Taney, C. J., that, “In a proceeding upon a bond, the liability of the principal cannot be extended beyond that of the sureties,” and the bond there under consideration was an injunction bond. This case was followed and approved by this court in Krug v. Bishop, 44 Ohio St., 221. See, also, in this connection, the cases of Palmer v. Foley, 71 N. Y., 106, and Johnson v. Elwood, 82 N. Y., 362, 365. *120 As observed by counsel, this is conceded by the form of the present action. It is on the bond and the contention of the plaintiffs is, that the terms of the bond have been complied with. No action can be maintained on the bond without a decision that the injunction ought not to have been granted.
And this presents the question' whether the award of the arbitrators is the decision required by the terms of the bond, in an action on it for damages. We think it is not. The decision contemplated by the bond, without doubt, had reference to a decision by the court on the merits of the ease, in which the action was pending. It was required and giyen in pursuance of the statute, section 5576, Revised Statutes, and could have had reference to no other decision by any known rule of construction. There is a marked difference, as we shall presently show, between such a decision and the award of the arbitrators in this case. There has been much discussion,, as to whether the arbitration had, was a common law or statutory one. If it were material to decide this we should be compelled to hold that it was a common law arbitration, Western Female Seminary v. Blair, 1 Disney, 370; Estes v. Phillips, 2 Superior Court Reporter, 3; Childs v. Updyke, 9 Ohio St., 333; Swasey v. Laycock, 1 Handy, 335; Brown v. Kincaid, Wright, 37.
These cases show that common law arbitration exists in this state, notwithstanding the statute; and if the arbitration had in this instance, was not such, it would be difficult to define the difference in the two methods. If there is any, it must be in the fact that one is made under, and substantially conforms to, the statute. But the submis *121 sion under consideration conformed in no particular to the statute — was as oblivious of the statute as if it had no existence.
This evidently' was not a matter of oversight— it was according to the deliberate purpose of the parties — they bound themselves to stand to and abide the award, whether right or wrong, the obligation being assumed without qualification. It was not made a rule of court, for it was not the agreement that it should. The cases cited show, that, as a statutory award, it would have been of no avail, for want of conformity to the statute; and that the only way effect could be given it, was to treat it as a common law award, as was done by the parties on the award being made. The principle of common law awards- was preserved to save such as could not be given effect under the statute, and many awards have been sustained by the courts, on the ground that they conformed to the liberal principles of the common law, where they could not have been sustained as awards made under the statute. Childs v. Updyke, supra.
But the question here is, not what the arbitration had should be called, but whether the decision by the arbitrators is the decision, or its equivalent, required by the bond in an action on it. In a decision by the court the law requires that it shall conform to the law and the facts of the case, if it do not, by taking the proper steps, its judgment may be reversed by the proper tribunal at the suit of the party aggrieved. But such is not the case as to the award made by the arbitrators in this instance, under the agreement of submission between the parties. It is true that the issues of law and fact between the parties in the case were *122 referred to the arbitrators to be heard and determined as a court. But whether they so heard the case or not, whether they erred both as to the law and the facts, no remedy was provided, and none could be had, however erroneous, their award mig’ht be in point of law and fact. They heard the ease as a quasi court at most, not as the ministers of justice appointed by the law; and their judgment was to be, and is, final and irreversible by any tribunal. If there had been a provision that the award should be made a rule of court, and subject to be set aside or confirmed by it on a review of the law and facts on which it was made to rest, there would be some ground for the argument, that it is the equivalent of the decision required by the bond. But we have shown that such is not the case, that it is simply a common law award, and, as said by Scott, J., in Childs v. Updyke, has no judicial force. We have been cited to what is said in Morse on Arbitration, 487; that an award, as between the parties, has the effect of a final judgment. This may be true in the sense that it concludes the parties on all matters submitted by their agreement. But this is so because it is the result of their agreement, and not because of any judicial character the award may have. The railway company cannot again maintain an action for, or claim, the stocks and bonds in question. This is so because it is bound not to do so by the agreement under which the award to that effect was made, and not because it has been so judicially decided by the court that allowed the injunction. This has not yet been so decided; and, notwithstanding the award, it may be true as a matter of law and fact that the injunction was rightly allowed. If so, the intervention of the *123 arbitration has not, with respect to the bond, changed the rights of the company from what they were at the allowance of the injunction. If, as a matter of law and fact, it was not liable then on the bond, it is not liable now. For there has been no judicial determination conclusive upon that question. The only judicial determination that has been made in the case, touching the merits, was the ruling of the court of common pleas, in which the action was commenced, on a motion to dissolve the temporary injunction that had been granted. The motion was overruled. The Columbus, Hooking Valley & Toledo Ry. Co. v. Burke, et al., 19 W. L. B., 27. This holding has never been reversed, nor the injunction dissolved by the judicial action of any court, as will be hereinafter shown.
2. It is, however, claimed that the plaintiff, after obtaining the injunction, voluntarily dismissed its action, and is thereby estopped from insisting on the terms of the bond; and a large number of authorities are cited in support of this proposition. We have carefully examined these cases, and see no reason to question the decision in any of them. When a plaintiff obtains an injunction by giving’ a bond to answer for such damages as may be caused the defendant by its allowance, and, afterward, voluntarily and without the consent of the defendant, dismisses his action, there is much reason for holding that he should be estopped to say, in an action on the bond, for the recovery of damages, that it has not been decided that the injunction ought not to have been granted. For, in such case, he, by his own act, has prevented the defendant from having such a decision. And such is the substance of the holding in the various *124 cases cited by counsel for the defendant in error. But none are cited, and we have found none, that the same rule applies, where the dismissal is with the consent of the defendant. And there is not the same reason for holding that it should. In such case the defendant has an opportunity to insist that, before the dismissal is had, the court determine whether the injunction ought to have been granted, so that an action may be prosecuted on the bond, if such is hiS purpose. If he fails to do this, and consents to the dismissal of the action, his conduct is consistent with the inference that he intends to waive any right he may have on the bond. It may be, and no doubt frequently happens, that, in such case, the defendant is content to be left with a recognition of his right .by the plaintiff to the subject of dispute, without further litigation; and consents to the dismissal for such reason. But whether such be his intention or not, in such case, he cannot, for want of a predicate, maintain an action on the bond: For it has not been determined that the injunction was wrongfully granted and the defendant is not estopped from insisting on the fact. The dismissal in this case, as shown by the record, was by consent of the parties. The effect of the entry so made, is not varied by the fact that the entry shows that the plaintiff dismissed its action because it had been awarded that it had no cause of action, and should dismiss its case; for if the award had not the effect of a judicial determination of that fact, such effect was not imparted to it by stating it as the reason for dismissing the action, unless it may be claimed that, by doing this, the plaintiff admitted that the award is right. There is no such express admission nor can this be inferred from the entry. All *125 ■the entry admits is that such award had been made, not that it is right, and that by it he is required to dismiss the action; and, if he does not, the defendant can, by pleading the award in a supplementary answer, cause the suit to be dismissed, because he had made a binding ag-reement to dismiss it, if it should be so awarded. And if the latter course had been pursued, it would then be quite clear, that the dismissal by the defendants would not have availed them in an action on the bond, unless the award of itself would be a sufficient predicate; which we have shown it is not. The entry only conformed to the agreement, and relieved the defendants from the necessity of tiling a supplementary answer, and causing the action to be dismissed on the award made in pursuance of the arbitration agreement. It is the substance of the thing done, and not its form, that is to be considered and have effect. In all the cases with which we are familiar, or that have been cited in argument, the courts have required, as a necessary predicate, in an action on the bond, a judicial determination of the merits of the case in favor of the defendant in the action in which the bond was given, either in a trial on the merits or on a motion to dissolve the injunction, except those where the plaintiff dismisses his action without the consent of the defendant. In the excepted cases, for reasons just given, he is estopped from insisting on the terms of the bond, and in none others. Thus in Krug v. Bishop, the suit was dismissed on motion of the defendants because the plaintiffs had failed to make and perfect the appearance of certain new parties in accordance with the order of the court, and it was held that such dismissal did not warrant an action on the bond. It *126 is true that the dismissal was without prejudice, but this was not a controlling circumstance. It was not a part of the ratio decidendi. The reason of the decision is that, considering the ground of the dismissal, it was not determined thereby that the injunction ought not to have been granted. In Johnson v. Elwood, 82 N. Y., 362, it appears an action had been brought to restrain the defendants from entering upon certain lands and cutting timber, and a temporary injunction was granted. This was dissolved by stipulation on the determination of another suit determining the title to the land; and a motion was then made, under the practice in that state, for a reference to ascertain the damages sustained by reason of the injunction. On appeal it was held, that there was no breach of the condition of the undertaking, which provided for the payment of such damages, in case the court should finally decide that the plaintiff was not entitled to the injunction. In the opinion by Miller, J., it is said, “The undertaking provides for the payment of damages in the event, only that the court shall finally decide that the plaintiff was not entitled to the injunction. There has been no breach of the condition in this respect, and no final determination which warrant a reference to compute the amount of damage. In Palmer v. Foley, (71 N. Y., 106), the defendant had consented to a discontinuance and that the order to that effect might be entered which was done; and it was held that this was not equivalent to a final decision of the court and there was no breach and no right of action, and that the order of reference to ascertain damages was improperly granted. It was laid down that there was no judicial determination or opinion given upon the merits of the action, or the *127 right of the plaintiff in the action to the injunction at the time it was granted, and that it was never finally determined by a judicial decision. An amicable and voluntary agreement to discontinue was not enough. “This case,” says the judge, “is directly in point and the granting of an order discontinuing the action because the plaintiff failed to proceed, as required by a prior order, is not sufficient to establish that there was a decision. ” The injunction had been dissolved by stipulation on the determination of another action involving the title to the land in dispute. Speaking in reference to this, the judge said: “It does not alter the case because the injunction was dissolved or that in another case the court held that the plaintiff has no title to the premises; and it is a sufficient answer to the application, to ascertain the damages, to say there has been no determination in this case as to the right of the plaintiff to the injunction originally.” This being true as to the judgment of a court in another case on the question of title to the subject, of dispute, a fortiori it must be true as to an award made by arbitrators on a submission in pais.
In Prefontaine v. Richards, 47 Hun., 418, Prefontaine being about to foreclose a chattel mortgage for $1,000, given him by Richards, the latter secured an injunction claiming that Pref ontaine owed him $923.00. The action came on for trial, when Richards and Pref ontaine met and settled the matters in difference, agreeing that Richards was indebted to Pref ontaine in the sum of $571.00 and that judgment might be entered against Richards for that amount and with costs. It was also stipulated that the injunction should be dismissed. Accordingly, judgment for the amount named was *128 entered against Richards and the injunction was dissolved. Held, that there was no decision of a court that Richards was not entitled to the injunction at the time when he obtained it. And the court observed, that, “The defendants are liable according to the terms of their undertaking and not otherwise. ’
Benedict v. Benedict, 15 Hun., 305, was an appeal from an order directing a reference to ascertain damages. The suit had been brought for a reconveyance of lands on the claim of a verbal agreement, that it was to be reconveyed if not paid for, and an injunction had been granted restraining the defendant from incumbering the land or collecting rents. It was referred to a master, who found the fact of the verbal agreement, but held the same void under the statute of frauds, but also held the plaintiff had a lien for the purchase money and ordered a sale, but ruled and decided nothing as to the injunction. The court reversed the order because no final decision had been made authoizing a reference; and used this language: “According to the condition of the undertaking, there must be a final decision — that is, one made at the determination of the action; and the decision, in order to authorize an action on the undertaking, must be in effect that the plaintiff was not at the time of obtaining the injunction, entitled thereto, citing cases. See, also, Weeks v. Southwick, 12 How. Pr. Rep., 170; and particularly, Palmer v. Folley, 71 N. Y., 106, cited by Miller, J., in Johnson v. Elwood, supra.
In Myers v. Parker, 6 Ohio St., 505, it was held, that no action could be maintained on an appeal bond where, by its terms, the liability of the obligors was made to depend on the judgment of the *129 supreme court of the county, that court having; been superseded by the district court, and, in ■which court, the case was heard and determined.
These cases, and many similar ones, all illustrate the principle heretofore stated, that no recovery can be had on a bond or undertaking except in strict accordance with its terms — there must be a showing that-it has been determined by the court, that the injunction should not have been granted; and, also, that any agreement between the parties, subsequent to the allowance of the injunction, by which the action is dismissed and the injunction dissolved, is not sufficient in an action on the bond, where there has been no judicial determination that the injunction should not have been allowed; and, consequently, an award made by arbitrators selected by the parties, and in no way subject to the control of the court, cannot have that effect, for it only binds the parties as an agreement, not as a,judgment rendered by the court, in the exercise of its jurisdiction, upon the case made by the parties and submitted to it. The bond contemplated such a judgment, and none other.
In an application for a rehearing it has been strenuously insisted, that there is nothing in the record to show that the case was dismissed by consent; and, that the point is a new one, not presented below, and, for the first time, presented here in the opinion of the court. This is certainly a grave mistake of counsel. It is presented in the answer of the company and not denied by the reply. The averment of the answer being “that it, ” the entry, “was by agreement of said, parties and at- the instance of said plaintiffs,” entered of record in the case. This is not denied by the reply, and could not have been without contradicting *130 the record — the language of the entry being, ‘ ‘This day came the parties by their attorneys and by consent showed to the court,” the matters contained in the entry, which include the dismissal of the action and the dissolution of the injunction. We are unable to see how, in the face of this entry, it can be claimed that the dismissal was without the consent of the defendants. And as often as the case has been argued in this court, the point has been made and insisted on by counsel for plaintiffs in error.
3. The defendants in error also rely on the provision in the agreement of submission,' that its execution should not “in any wise impair the liability ” of the obligors on the bond. But this stipulation cannot be so construed as to impair any of the rights of the obligors. To insist on the terms of the bond is one of their rights, and does not impair their liability. It was wisely inserted, as without this provision it might have been contended, and in fact has been, that the submission to arbitration of itself worked a discontinuance of the action. This has been held by many respectable courts, in the case of a common law submission. Morse on Arbitration, 267; Mooers v. Allen, 35 Maine, 276; Bigelow v. Goss, 5 Wis., 421; Larkin v. Robbins, 2 Wend., 503; Green v. Patchen, 13 Wend., 293.
4. As to the dissolution of the injunction, this we think, is of no avail to the plaintiffs, in their action on .the bond, for several reasons: (1) It was a useless act and determined nothing. The temporary injunction perished with the dismissal of the action, so that there was nothing to dissolve. It was a mere incident to the action and could not survive it. Krug v. Bishop, supra; Trustees v. Mc- *131 Clannahan, 53 Ohio St., 403. (2) It is averred in the answer and expressly admitted by the repty, that the court took no judicial action in the dissolution of the injunction. It was done by consent and as a consequence of the award. The dissolution then decided nothing’ on the important question, whether the injunction ought to have been g’ranted.
Judgments of the circuit court and of the common pleas, reversed; and judgment for the defendants below upon the pleadings and the admitted facts in the case.